Counsel for Appellant, if you would make your appearance and proceed, please. Good morning, Your Honors, and may it please the Court. I'm Leah Yaffe with the Federal Public Defender's Office for Mr. Eloy Romero. The question in this case is whether the Albuquerque police could inventory search everything in Mr. Romero's vehicle, including his backpack, on the sole basis that his vehicle was uninsured, and even though Mr. Romero was present at the scene, not under arrest. The answer is no. Although it's sometimes permissible to conduct an- It wasn't just that his insurance, he was uninsured. He was revoked on his driver's license too, wasn't he? Yes, correct. So he doesn't have a driver's license and it's not- He's not gonna be driving. The car can't be driven on the road for those two reasons. That's the basis for the impoundment and then the ultimate inventory search. And while it's sometimes permissible for an officer to conduct an early on-scene inventory search before a vehicle is actually impounded, taken to the tow yard, officers cannot expand the scope of the inventory search when they do so. And that's what happened here. The detective search was unreasonable because he started right away with Mr. Romero's backpack without any reason to believe that Mr. Romero would not be able to take his backpack home with him when he left the scene. Why- Well, number one, this notion that somehow or other one needs to take into consideration in the propriety of the inventory search whether Mr. Romero could take his backpack with him or not. Did you make that argument to the district court? I have no recollection that you did. Your Honor, we preserved this argument fully in the district court because what this court requires for preservation is specifically three things. One, that you identify the correct search and historical facts. Here from the beginning, we were challenging the search of the backpack as being premature, the rummaging around in the car as an unlawful search with the ultimate goal, obviously, of kicking out the discovery of the items in the backpack. So it wouldn't have been included in an inventory search. Why did you say the search was premature? We argued that it was not in accordance with standardized criteria and also that it did not serve the purposes of an inventory search, which is both an objective and a subjective inquiry, pointing to the fact that, you know, as soon as there is an indication that there is a basis to impound the vehicle again for traffic purposes, the officer starts immediately inventorying, starts with the backpack, doesn't tell anyone what he's doing, doesn't call a tow truck, doesn't generate a tow-in form, which they say they need to do for their policy. At the point that he looks at the backpack, does he know that the defendant doesn't have a license and that it's not his vehicle? Yes. Yes. Well, then why does he have to tell anybody what he's doing? Why does he have to say, well, your defendant, this is what I understand to be the case. We're going to have to tow your vehicle. Is there anything? Why is it a matter of law that he's doing? That's not the basis of our argument for the inventory search. It was part of the impoundment argument below. We're not challenging the impoundment of the vehicle on appeal, just to be clear. The point is that that is evidence of the officer's investigatory motive in beginning with the backpack search, and also the fact that this backpack search did not serve the purposes underlying the inventory exception. So continue with your explanation for why there was preservation. Sure. So there are the three components that I was raising as to what makes a claim preserved in this court. The first being, again, the focus on the right search, the right historical facts. Second, you need to identify the correct legal doctrine. We've obviously done that here. We have a separate section in the district court motion about the inventory search being unlawful, even if the impoundment of the vehicle was OK. And third, you have to raise your argument under the correct prong, if there's a multi-prong doctrine. And here we raised arguments under both prongs of the inventory doctrine. One, that the officers didn't comport with their own criteria. And two, that this did not serve the purposes of the inventory exception. And again, the government's only defense in the district court and on appeal to this being an appropriate search is a fully administrative justification based on an uninsured vehicle and a lack of a license. Well, what I understand, though, to be your argument on appeal is that the unconstitutionality of the search turns in part on the fact that the defendant could have taken the backpack. And therefore, there would be no policy that would allow a search when a property that would not be present at the time of the impoundment or the inventory. Is that right? Yes. Well, then it hinges on the fact that he would take the backpack. That is a theory. And that theory was not articulated to the district court. So we don't have any information as to whether they would have let him take the backpack, which is a relevant fact, is it not? So two points, Your Honor, to the last point of your question. What we need to show is that the timing here was premature because it wasn't established at this point in the stop whether the backpack would have been in the vehicle. We don't need to prove the counterfactual inquiry that the backpack would definitely not have been in the vehicle. The point is that it was unreasonable rummaging around in the vehicle. That's the district court language to begin an inventory search before it's apparent what is actually going to the tow yard. But we don't know what the full facts are because there was no notice that the presence of the backpack or not would make any difference. Because the point would be there would be no implication that the backpack wouldn't stay in the vehicle unless there's some reason to believe that there was some policy that would allow the taking of the backpack. I disagree that this wasn't apparent from the record, Your Honor. We have always focused on the search of the backpack. That's where all of the contraband is in this search. The point is, could he have taken the backpack and how does that play into the constitutionality of the search? That's the issue. I understand that, Your Honor. But in saying that the scope of, this is the language we use below, that the scope of, let me find the actual quote. The scope of an inventory search cannot exceed what is necessary to serve the interests underlying the exception. The officers exceeded the permissible scope of an inventory search when they rummaged through the car looking for evidence of a crime. The focus has always been on this initial search of the backpack being inappropriate with the idea being that if they hadn't done that, they wouldn't have ended up finding the contraband because they wouldn't have searched the backpack. And in the inevitable discovery section of our briefing, we also made the point, although could be more detailed, that he wasn't actually arrested in this traffic stop. So I think all of the relevant facts that the district court needed in order to understand how to rule on whether this is a lawful inventory or not were in the record. This court has said that if you make a generalized version of an argument in the district court so long as you meet those three criteria, it's okay to make a more detailed, a narrower, a more specific argument on appeal. And what cases are you, what are you referring to? Sure. So primarily Murphy, but also the cases that... Murphy doesn't work. Murphy is not a suppression case, which I know firsthand. And Murphy is a case that deals with the making of an acquittal argument. That is an entirely different lens and framework than what we're dealing with here. So I do want to note that Murphy relies, so the government in their brief talks about how Murphy's a Rule 29 case. But in Murphy, the analysis for this general point that you can make a higher level argument in district court and narrow it on appeal, cites to cases that are not Rule 29 cases, specifically McIntosh and Street. So Street's a case where there is a challenge to the child pornography statute as being facially overbroad. And that was sort of the challenge in the district court. And then on appeal, there's a specific focus on one verb in the statute and all the reasons why that verb was overbroad. And the Court of Appeals ruled against us on the merits, but they said that was preserved because you made the generalized argument below. And it was enough to put the district court on notice of what they should be considering. And that's what Murphy relies on for its point. So I reject the idea that it is unique to the Rule 29 context. I'll also note that the government doesn't dispute that we have always, and I believe we've preserved our whole argument, but regardless, the government doesn't dispute that we have always preserved a pretext argument in this case. And that this was... I'm sorry? I didn't hear what you said. You kind of swallowed your word there. I apologize. We've always preserved a challenge to the inventory search being pretextual in this case. That's at least as far as the government's willing to go. But you said already in your argument today that an inventory search can be started before you've called a tow truck, before you've started paperwork to take it. And so that that is... That kind of goes against your idea that it is pretextual, since by then they knew he couldn't possibly drive it. So they knew they had no option, but... The cases where this court has condoned an early inventory like this, the driver hasn't been available to take his belongings with him, either because they're impounding a car where there's no driver around, or the driver is being arrested. You said that backpack was his. First thing, I don't think it was his car. Am I correct about that? Right. That's not in dispute anymore, I think. So it's not his car? No, I mean, I think it is his car. He bought the car and we put evidence for it in the suppression hearing that he had... Did he tell the cops that? He said he was buying his car from his friend, which was accurate. But the friend that he listed was not the name of anybody that they found in the documentation in the car at all. To the extent the court is concerned that officers still needed to investigate his lawful authority to drive the vehicle at this time, that's a... Or whether he really owned it, because his claim follows from somebody that they couldn't relate to in the car at all. And in any event, they knew he couldn't drive, so they knew they were going to have to impound the car. And the officer said, boy, we would never have given him that backpack without doing an investigation on it. And I think the first time that he said, that is not my backpack, was after they had picked up the backpack, but before they had gotten it opened and opened up the box inside of it. Is that correct? They had unzipped, opened, and reached into the backpack, but they hadn't opened the lockbox. If I could just address the earlier parts of Your Honor's question. First, there's nothing in the record where the officer said he wouldn't have given him his backpack back. I think that's an argument that the answer brief makes. And why is it not in the record? Because we never had the theory articulated so that they would know that they needed to develop evidence on it. I disagree, Your Honor, because from the beginning, the premature, early, immediate search of the backpack was the focus of our inventory argument. Both under a criteria prong and under an objective and subjective prong, but definitely under the subjective prong, and the government doesn't dispute this. We've always said that by going straight to the backpack, not telling anyone, maybe that doesn't make it an unlawful impoundment, and we're not arguing that it does, that that was pretextual and inappropriate. And if they hadn't done that, that this contraband wouldn't have been found. So there's no question that that part of the argument at minimum is preserved here. And there was no testimony, again, to the effect that they wouldn't have let him take the backpack otherwise, even in response to our pretext argument. And just to get back to the point about ownership of the vehicle, the district court has, Your Honor, two bases for finding lawful impoundment here. We haven't challenged that. Uninsured and no driver's license. There's an atmospheric argument in the answer brief that maybe they need to make sure it's not a stolen vehicle, maybe they need to make sure it's not a stolen backpack. The government has never tried to justify this as a criminal investigatory impoundment or search. And the inventory exception does not provide a loophole around having reasonable suspicion or probable cause to investigate if someone's in possession of stolen items. And if it was lawfully impounded, the bases to lawfully impound the car existed, why would that not also authorize them to lawfully inventory the contents of the vehicle? Both because it was against standard criteria here and because from a reasonableness perspective, the scope of a search cannot diverge from the basis for its justification. And if the justification is simply that this car can't be legally driven on the road, there's no reason to search what's effectively the equivalent of somebody's purse when they're going to go home. Driven on the road, therefore, they're going to tow the vehicle. Therefore, they're going to inventory. They need to inventory the vehicle before they tow it. I mean, if the car is going to be lawfully impounded, that means that they are going to tow the vehicle away. They're going to put the vehicle into law enforcement custody. Impoundment and inventory are two separate doctrines. And I understand that in the average case, a lawful impoundment is going to mean a lawful inventory. But in the average case, there's not a driver there ready to take the equivalent of his purse home. Something that has not been said below. There was no, you rely on the fact that he would have taken the purse. I mean, taken the backpack. There's no mention of that below. So if that is the critical linchpin, there needed to be some evidence developed on that. There was an evidence developed. Why? Because you didn't articulate that below. I disagree with that, but I might reserve the remainder of my time for rebuttal and address it then if that's all right. Good morning, Your Honors. I think it's still morning. Nora Wilson on behalf of the United States. May it please the court. Senators, I'd like to begin by discussing waiver, which is actually where the court had just left off in the previous section of this argument. Here we have a very clear waiver. Romero never argued to the district court that the officers were required to allow him to remove items from the vehicle. He didn't use any words that would have conveyed the substance of his argument to the district court. And the United States can't be expected to respond to something that was not argued. And the district court can't be expected to address something that wasn't brought up. So it's unfair to bring it up now. And that's exactly why waiver is a rule. As the court is fully aware, Federal Rule of Criminal Procedure 12b3c requires that suppression motions be raised pre-trial if the basis for the motion is then reasonably available. It's clear that Warwick laid out that absent good cause, which is rarely found, the court must decline review of any argument not made in the motion to suppress and raise for the first time on appeal. Romero doesn't try to show good cause in this case, but instead argues that his new argument is not, in fact, new. And why isn't the defense counsel right that Murphy allows for this elaboration and building upon the argument that was raised below? If his argument below focused entirely on the premature invasion, essentially search of the backpack, this is a version of that one could contend, that essentially the backpack would not have been there. I mean, in other words, there was a lawfulness because they would have taken the backpack. Your Honor, with Murphy, your Honor is correct that Murphy doesn't apply directly because it was a Rule 29 case. But even if arguing that the general assertion that one can build on more generalized arguments on appeal as long as they're just doing a more detailed version of that, that's not what we have here. In here, we have a general umbrella, much very similar to the cases like Anderson and White, where the defendant argues one version of a reasonable suspicion violation and then switches to a different reasonable suspicion violation on appeal. Those have been consistently ruled waived by this court. And even in Murphy, in the discussion under the Rule 29 context, there's still a discussion about there needing to be notice. The parties and the court need notice to be able to actually answer those allegations, about those violations. And if they aren't brought up then, the court's not in a position to be able to evaluate it based on this meager record. And let me just toss something out to get your response to this. At least one reason that it struck me that Murphy is different than this situation is not because of the sort of categorical Rule 29 context versus this context, as much as the idea that in the Rule 29 context, a defendant is incentivized essentially to make a general objection. Because if you make a general objection, you have the potential to build on that objection. And if you articulate specific theories in a Rule 29 context, then you forfeit if you try to make another theory above. It's my understanding that there really is no, the same sort of incentive structure does not work in, and I'm just talking this out, doesn't work in the Rule 12 context. Because really there, you are supposed to enumerate theories, right? That's correct, Your Honor. And this court has been consistent since 1995 about the defendant in a Rule 12 context needing to supply sufficiently definite, specific, detailed, and non-conjectural factual allegations that the government can respond to and that the district court can address. Yeah, but the consequences of that have changed since Burke, right? Now it's very clear that that is, that's a waiver, not a forfeiture. Yes, Your Honor. And with the waiver, there's not even plain error review. And I think also to your point, with regard to Murphy, the court there also talked about, if you draw the court's attention, the district court's attention to a specific argument and you focus their attention on that, you can't expect that the record's going to reflect their attention being on a whole different topic. And they warned about that, and that's exactly what we have here. And so, Your Honor, I think that that's, I've gone over the, most of the waiver issue. I would just like to highlight a couple of other things. I already talked about Anderson and White. I think that Hamilton is another case that is very helpful in this context. And I, you know, pointing to footnote 9 in that case, I thought the way that they explained it matched up very well with our case. So let me interrupt just one second. Yes. Pelling stated that there were occasions where you could, an officer could do an inventory, begin an inventory search before the tow truck's been driven, called before you've taken other steps. Do you agree with that? And how do we know that this was an inventory search at this time? Yes. So in a common sense perspective, of course, it occurs before the vehicle is physically on the tow truck. You, her statement was you could begin the inventory even before you complete the paperwork or call the tow truck driver. Yes. And you do agree with that? I do agree with that. How do we know then whether this was an inventory search or a specialized criminal evidence search? For one, this, they began inventorying the property before there was any discussion about arresting the defendant before. Was he making a list? Did he have a clipboard and writing a list of what was in there? So Detective Montoya did discuss the general procedure for doing an inventory and that they were working as a team and that the officers who had computers in their car, when they document items of value, they would put those on that tow sheet. Was he shouting out to his other officer, one backpack, brown? He was not shouting out, no, your honor, but. So how do, I mean, so if they had, it doesn't seem to bear the hallmarks of trying to make an inventory. I mean, unless the guy's got a photographic memory and he's going to say, boy, I found a whole lot of stuff in his car and I remember there was this, this, this, this, this, and this. I don't think that's the way, typically, inventory searches are more methodical. Your honor, I understand what you're saying, but an inventory search, as is explained by both Detective Montoya and Officer Simmons in the record, is for searching for items of value. So an inventory search is not going to list. Or an item of risk and violence. That is, they don't want a car sitting in an impoundment that's got a loaded gun in it. Yes, they explained that the purpose is to protect from both theft of the vehicle, from items in the vehicle, and also to protect the department from liability for said items being missing later on. But you do take an inventory when you're doing the search. And this, this, this wasn't the way, I don't think this was the way that search was being conducted. So your honor, to get back to the point I was discussing just a moment ago, when the officers are doing the inventory, they are to document items of value and for the purposes we just discussed. But specifically in the context of determining which items should be listed on a tow sheet when they're doing an inventory, they're going to list items of value. They're not going to list every single item that's in the vehicle. There were a lot of items in this vehicle, things strewn about the back seat. One of the most common areas where someone would carry something of value would be in their personal baggage. And they know that, we know that because of the testimony of Officer Montoya, is that? They, they did discuss that, I believe both officers were asked about whether a backpack would, is a common place where items of value would be stored. And, and at least I thought I understood, and perhaps incorrectly, the colloquy with Judge Evel to go to the question of, how do we know it is an inventory search when he just went to the backpack? I mean, at that juncture, at the juncture, that juncture, we knew that, that he didn't have a driver's license, right? It wasn't valid. And we knew that at least there was some basis to believe the car wasn't his, right? And so at that point, how do we know that this is an, an unlawful search as opposed to an inventory search? We know it's an inventory search because they knew it was going to be towed. And even, even without the driver's license issue, which is a whole nother reason, knowing that the vehicle has no insurance and that there is no person who is going to be allowed to drive that vehicle, when Detective Montoya knows that, when other officers know that that vehicle has no insurance, it's going to be towed, the search is an inventory. That didn't answer the question, because even on a very standard run-of-the-mill inventory, and you know it's going to be towed, somebody could get out of the car and say, okay, I know you got a tow because I don't have a valid driver's license. It's revoked. But I do have my, I do have my purse in the car with my driver's license and money and cash. I'd like to take that with me. And I assume the officers would say, yeah, we don't need, that's a remove, removable item. We don't need to take that, that, because you're legally authorized to carry a purse, even if you don't have a driver's license. So that doesn't, I mean, we've got to go more than just say it's an inventory search. And we knew we had to take an inventory of this backpack because we weren't going to allow you to take it. Now that becomes clear once he says it's not mine. Problem is, he didn't say that until they had already started to search the backpack. So, Your Honor, this goes back to why, why this argument has been waived, is because this case, the defendant did not ask to remove items from the vehicle. And furthermore, no questions were asked about whether the officers would have allowed that in these circumstances, whether the officers would have felt that that was safe for them when this vehicle had, they were still investigating whether the vehicle had been stolen and then the ownership of the vehicle. They still had no proof of who, that this driver owned the vehicle. This person had pulled away from officers from three marked units that lit up their lights right behind him in a parking lot and he drove away from them and then refused to pull over for several minutes on the road. And they specifically said, at one point when he said he offered to get the whatever document he felt might be in the glove box to prove ownership of the vehicle, the officer said, no, given the way that you have behaved thus far, we are not going to allow you to reach into that glove box, okay? And they also performed a pat down when they removed him from the vehicle. So there are things in the record that indicate that there were officer safety concerns as well, but that was not explored because that was not the argument made in district court. Well, let me, let me just zero in on a couple of facts that I want to tease out for a second. Okay. He had not disclaimed ownership of the backpack prior to the officer sticking his hand in the backpack, right? Right. Okay. All right. What is the implication of that intrusion into the backpack at that juncture? Are you claiming that that is covered within the scope of an inventory search, which he knew he was going to undertake anyway? Because at least I understood the defendant to be saying that that act of intrusion itself reflected a pretextual illegal evidence searching type investigatory purpose. I think the defendant was making that argument, but the actions of Detective Montoya in looking in the backpack were within the inventory search. They were all, all of that action was after he knew the car was going to be towed. And I'm not sure if Your Honor was asking this, but to the extent of the timing of whether that affected, you know, him making the statement about abandoning the backpack, it didn't. He already knew what was in the backpack. He was already going to disclaim the backpack because he knew there was contraband inside of it. He did not know what Mr., what Detective Montoya had or had not seen at the point that he held up the backpack and asked, is this yours? And in fact, he had already began hedging before that when he asked, is all the stuff in this vehicle yours? And he says, most of it, yeah. And then he starts talking about how, you know, buying it from my buddy. Then, then he says, the backpack's not mine. I don't know whose it is. Must be my buddy's. Is there, is there any, okay, I forgot. I lost my train of thought. Go ahead. And that, so, so those, those statements were not affected by anything that the detective did. Okay. I remember what I was going to ask. Does it matter at all whether Detective Montoya indicated, stated his purpose when he reached his hand in the, in the, in the bag? In other words, stated that now we're in an inventory search posture? Because at least I heard that as being one fact that was highlighted by the defendant. No. Detective Montoya's statements to the defendant make no difference as to when, when the inventory began. Same, even making statements to other officers. The, the point is when the vehicle was going to be towed, when officers were aware the vehicle needed to be towed, it's an inventory search. And so whether he announces that to the defendant or not. Why would we do an inventory search on the side of a busy road instead of, knowing it's going to be towed instead of waiting until it is towed? So for the most part, what, what the detective and I think Officer Simmons testified about as well, is that they're trying to identify items of value, including before it's at the tow yard, because they don't want things to be shown up as missing later on. So if someone goes to pick up their vehicle the next day or however many days it is before it's available for them to pick up, that they don't have, they can't say that, oh, you know, they don't have to deal with the issue of some tow yard employee or something going missing between the time the car is actually put on that tow truck and the time that the lawful owner regains access to the vehicle. So it is the timing of doing. So is this a common practice? Yes. To do inventories before the tow begins, the actual physical tow begins. Yes, Your Honor. And so, I'm sorry, I lost my train of thought. I think that, oh, and I'm out of time, so I guess that's okay. Well, I mean, if you have something to say, go ahead and say it. It's, I've, I lost it, Your Honor, so it's no problem. Thank you. Thank you. All right. Three quick points on preservation. First, there's no dispute we preserved our pretext argument. The district court doesn't dispute that there's pretext here, just says if there's a lawful basis for an impoundment, there's a lawful basis for inventory, and that is an incomplete analysis for many of the reasons Judge Ebell highlighted with the government. Second, the idea that the government was missing an opportunity to explain that the officers would have searched the backpack before letting him take it, that would be an illegal search. That's Braxton footnote six. You can't inventory something if you're not actually going to impound it. Third, I would just urge the court to look at the cases the government cites in the preservation section. They are really different. Anderson is no reasonable suspicion of a harassment statute, doesn't preserve no reasonable suspicion of a jaywalking statute. Hamilton, a challenge for a stop not having reasonable suspicion is not the same as an escalation to arrest argument where the druggery of force resulted in an arrest without probable cause. Those are very different doctrinal arguments in these cases. Okay. Thank you, Your Honors. If you have no more questions, we'd ask you to reverse.  All right. Case is submitted.